UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

BAIDU, INC. and BAIDU NETCOM SCIENCE
& TECHNOLOGY CO., LTD.,

               Plaintiffs,

               v.

REGISTER.COM, INC.,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

:
:
:
:
:
:
:
:
:
:
:

No. 10 Civ. 444 (DC)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
REGISTER.COM'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York 10166-0193
Phone: (212) 351-4000
Fax: (212) 351-4035

*Attorneys for Defendant Register.com*

April 23, 2010

# TABLE OF CONTENTS

Page

ARGUMENT ................................................................................................................. 1

    I.    Baidu Waived Its Right To Sue for the Claims in Its Complaint .......................... 1

    II.    Baidu's Tort Claims Are Barred as Duplicative of the Contract Claim ............... 5

    III.    Baidu Cannot State Bailment, Conversion, or Aiding-and-Abetting Claims ........ 6

    IV.    Baidu Has Failed To State a Claim Under the Lanham Act ................................. 9

CONCLUSION ............................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ahles v. Aztec Enters., Inc.*,
    120 A.D.2d 903 (3d Dep't 1986) ................................................................. 7

*Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publ'g Co.*,
    580 F. Supp. 2d 285 (S.D.N.Y. 2008) ......................................................... 2

*Arell's Fine Jewelers, Inc. v. Honeywell, Inc.*,
    147 A.D.2d 922 (4th Dep't 1989) ................................................................ 2

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ..................................................................... 1, 3, 4

*Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C.*,
    47 A.D.3d 239 (1st Dep't 2007) .................................................................. 1

*Berman v. Sugo LLC*,
    580 F. Supp. 2d 191 (S.D.N.Y. 2008) ......................................................... 7

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
    70 N.Y.2d 382 (1987) ................................................................................. 5

*Colavito v. N.Y. Organ Donor Network, Inc.*,
    8 N.Y.3d 43 (N.Y. 2006) ............................................................................ 7

*Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.*,
    81 N.Y.2d 821 (1993) ................................................................................. 1

*Consumers Distrib. Co., Ltd. v. Baker Protective Servs., Inc.*,
    202 A.D.2d 327 (1st Dep't 1994) ................................................................ 4

*Convergia Networks, Inc. v. Huawei Techs. Co., Ltd.*,
    No. 06 Civ. 6191 (PKC), 2008 WL 4787503 (S.D.N.Y. Oct. 30, 2008) .......... 2

*Cromer Fin. Ltd. v. Berger*, No. 00 Civ. 2284 (DLC),
    2003 WL 21436164 (S.D.N.Y. June 23, 2003) ............................................ 9

*Daly v. Life Ins. Co.*,
    782 N.Y.S.2d 530 (N.Y. Sup. Ct. 2004)) ..................................................... 6

*Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    No. 02 Civ. 2561 (KMW), 2006 WL 335357 (S.D.N.Y. Feb. 15, 2006) .......... 9

*Diamond State Ins. Co. v. Worldwide Weather Trading LLC.*,
    No. 02 Civ. 2900 (LMM) (GWG), 2002 WL 31819217 (S.D.N.Y. Dec. 16, 2002) ......... 9

*Dubovsky & Sons, Inc. v. Honeywell, Inc.*,
    89 A.D.2d 993 (2d Dep't 1982) ................................................................... 4

*Green v. Holmes Protection of New York*,
    216 A.D.2d 178 (1st Dep't 1995) ................................................................ 4

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*,
    955 F.2d 1143 (7th Cir. 1992) .................................................................. 10

*Hutton v. Pub. Storage Mgmt., Inc.*,
    676 N.Y.S.2d 886 (2d Dep't 1998) .............................................................. 8

*Indus. Risk Insurers v. Port Auth. of N.Y. & N.J.*,
    387 F. Supp. 2d 299 (S.D.N.Y. 2005) ............................................... 1, 2, 3, 4, 5

## TABLE OF AUTHORITIES
### (Continued)

Page

*Jones v. Commerce Bancorp., Inc.*,
   No. 06-cv-835, 2006 WL 1409492 (S.D.N.Y. May 23, 2006) ...................... 6
*Levin v. Eleto Realty Corp.*,
   289 N.Y.S. 667 (1st Dep't 1936) ........................................................ 4
*Marvin E. Herman, Inc. v. White*,
   No. 91 Civ. 5025 (CSH), 1994 WL 363980 (S.D.N.Y. July 13, 1994) .......... 6
*Planned Parenthood Fed'n of Am., Inc. v. Bucci*,
   1997 WL 133313 (S.D.N.Y. Mar. 24, 1997) ...................................... 10
*Rosner v. Bank of China*,
   No. 09 Civ. 333, 2009 WL 3377886 (2d Cir. Oct. 21, 2009) .................... 9
*Sagendorph v. First Nat'l Bank*,
   218 A.D. 285 (3d Dep't 1926) .......................................................... 6
*SNS Bank, N.V. v. Citibank, N.A.*,
   7 A.D.3d 352 (1st Dep't 2004) .......................................................... 2
*Solid Host, NL v. Namecheap, Inc.*,
   652 F. Supp. 2d 1092 (C.D. Cal. 2009) .............................................. 9
*Thyroff v. Nationwide Mut. Ins. Co.*,
   8 N.Y.3d 283 (2007) ....................................................................... 7
*Tiffany (NJ) Inc. v. eBay, Inc.*,
   ___ F.3d ___, 2010 WL 1236315 (2d Cir. April 1, 2010) ...................... 10
*Transamerica Corp. v. Moniker Online Servs., LLC*,
   672 F. Supp. 2d 1353 (S.D. Fla. 2009) .............................................. 9
*U.S. v. Carroll Towing Co.*,
   159 F.2d 169 (2d Cir. 1947) ............................................................ 5
*Universal Tube & Rollform Equip. Corp.*,
   504 F. Supp. 2d 260 (N.D. Ohio 2007) .............................................. 6
*Verizon Cal. Inc. v. OnlineNIC, Inc.*,
   647 F. Supp. 2d 1110 (N.D. Cal. 2009) .............................................. 9
*Wornow v. Register.com, Inc.*,
   8 A.D.3d 59 (1st Dep't 2004) ........................................................... 6

**Statutes**

15 U.S.C. § 1114(2)(D)(iii) ............................................................... 9

**Other Authorities**

N.Y. Jur. Bailments § 27 .................................................................. 6
N.Y. Jur. Bailments § 33 .................................................................. 8
N.Y. Prac. Torts § 2:12 .................................................................... 7
Restatement (Second) of Torts § 224 cmt. b ....................................... 7
Restatement (Second) of Torts § 224 cmt. c ....................................... 7

Baidu's opposition brief confirms that this action is barred by the contractual waiver provisions that are at the heart of the parties' contractual relationship. Baidu—one of the largest internet companies in the world—is a highly sophisticated party that struck a clear bargain with Register: In exchange for inexpensive services, it waived any right to sue in the event that Register's conduct caused Baidu's Web site to experience a temporary service interruption. This contractual bar should be enforced here, not only because the parties so clearly bargained for it, but also because such waiver provisions serve important public policies in the orderly regulation of commerce on the Internet. Desperate to avoid this direct contractual bar, Baidu resorts to inflammatory rhetoric, using words such as "gross negligence," "reckless," "appalling," and "inexcusable." But labels and hyperbole, which are "no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The Complaint should be dismissed.

## ARGUMENT

### I.    Baidu Waived Its Right To Sue for the Claims in Its Complaint

Baidu does not dispute that all of its claims are covered by the plain terms of the Master Services Agreement's ("MSA's") Contractual Limitations Provisions. Instead, Baidu seeks to escape those provisions by invoking the "gross negligence" exception to the enforceability of liability waivers. Baidu, however, fails to inform the Court that the "gross negligence" exception is a narrow one, with an exceedingly exacting standard under New York law. A court will not relieve a plaintiff of a bargained-for liability waiver unless the defendant's alleged conduct amounts to "**intentional** wrongdoing," "**willful**" conduct that is "**fraudulent**, **malicious** or prompted . . . by one acting in **bad faith**," or conduct constituting "**reckless indifference** to the rights of others." *Banc of Am. Sec. LLC v. Solow Bldg. Co. II, L.L.C.*, 47 A.D.3d 239, 244 (1st Dep't 2007) (citations omitted) (emphases added); *see also Indus. Risk Insurers v. Port Auth. of N.Y. & N.J.*, 387 F. Supp. 2d. 299, 311 (S.D.N.Y. 2005) ("the gross negligence alleged must 'smack[] of intentional wrongdoing'" (quoting *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.*, 81 N.Y.2d 821, 823–24 (1993))). That is especially true "in a contract **between**

1

**sophisticated parties, not implicating public health or safety**," where "New York applies a more exacting standard of gross negligence than it would in other contexts." *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Publ'g Co.*, 580 F. Supp. 2d 285, 294 (S.D.N.Y. 2008) (emphasis added).[1] To evade "the general New York rule" that requires "enforce[ment of] contracts for the release of claims of liability," Baidu must plead facts that could satisfy the rigorous gross-negligence standard. *Indus. Risk Insurers*, 387 F. Supp. 2d. at 307; *SNS Bank, N.V. v. Citibank, N.A.*, 7 A.D.3d 352, 355 (1st Dep't 2004). It has not.[2]

Baidu does not so much as allege (nor could it) that Register acted intentionally, willfully, fraudulently, or in bad faith. (Opening Memorandum ("Mem.") 11–15). That glaring omission is dispositive: It precludes Baidu from invoking the gross-negligence exception to the New York rule that liability waivers will be enforced and thus binds Baidu to the terms of the MSA. Under those terms, this Complaint must be dismissed.

Baidu's only response is that Register's customer service agent missed "three red flags," rendering her conduct grossly negligent. (Baidu's Opposition ("Opp.") 8–9). Those "mistakes," however, do not, as a matter of law, come close to a pleading of "gross negligence"—either alone or collectively. Two of the "red flags" do not plausibly support a claim of even *ordinary* negligence, let alone gross negligence. First, Baidu alleges that Register's agent e-mailed the security code to the Baidu e-mail account after the Imposter "provided an *incorrect* response to the Register representative's request for security verification information" (Opp. 8), intimating through emphasis that the agent acted inappropriately. But anyone who has ever forgotten a Web site password knows that sending a new password or security code to the registered e-mail address is standard operating procedure.

---

[1]  *See also Convergia Networks, Inc. v. Huawei Techs. Co., Ltd.*, No. 06 Civ. 6191 (PKC), 2008 WL 4787503, at *5 n.5 (S.D.N.Y. Oct. 30, 2008) ("Between sophisticated parties to a commercial contract, New York would allow the avoidance of a limit on consequential damages in narrow circumstances.").

[2]  To the extent that Baidu urges a lower standard (*see* Opp. 7-8), the cases it relies on involved unsophisticated parties or implicated public health and safety, such as the grossly negligent maintenance of burglar-alarm systems. *See, e.g.*, *Arell's Fine Jewelers, Inc. v. Honeywell, Inc.*, 147 A.D.2d 922, 923 (4th Dep't 1989).

Second, Baidu counts as a "red flag" that the agent believed the Imposter despite the Imposter's use of a "gmail" address with the "provocative" title of "antiwahabi2008." (Opp. 5). Baidu does not explain, however, why the agent's ignorance of the supposed implications of that e-mail address constitutes gross negligence. It has not alleged that Register had a *duty* to educate its agents about the business of each of the "2.5 million customers" who may contact Register to update their accounts. (Opp. 2). The "flag" is therefore not a flag at all. There is nothing in Baidu's complaint suggesting that the agent should have known that Baidu is a Chinese-language search engine and a competitor of Google. And the proposition that Register's agents should scrutinize routine account inquiries for potential geopolitical undertones—how many Americans, after all, would know what *wahabi* means?—or question the prefix "anti," is quite simply absurd.

The third "red flag" is a single mistake by Register's customer service agent: an error in comparing the eight-digit numeric code that she had forwarded to the criminal Imposter with the eight-digit numeric code the Imposter reported back. (Mem. at 13). That isolated mistake cannot bear the weight of a plausible claim of "reckless disregard for the rights" of Baidu.[3] Looking past Baidu's excessive hyperbole, its factual allegations can at most support a claim of "[o]rdinay mistake[] or miscalculation[]" in Register's good-faith attempt to follow security procedures. *Indus. Risk Insurers*, 387 F. Supp. 2d at 307. That is not enough for Baidu's gross-negligence claim to withstand a motion to dismiss.

Finally, grasping at straws, Baidu argues that its gross-negligence claim can plausibly rest on Register's failure to timely respond to the incident, misleadingly arguing that Register "extend[ed] until two days the time it would take to restore full service to Baidu." (Opp. 10). Baidu's own allegations, however, belie the claim that Register was negligent in failing to respond promptly. According to the very portions of the Complaint that Baidu cites, Register

---

[3]    Baidu employs baseless scare tactics in arguing that if its Complaint is dismissed, registrars "would be able to simply turn over control of their customers' domain names to unauthenticated users with impunity." (Op. 3 n.3.). That is not the case. Only when, as here, a plaintiff is unable to state a claim for gross negligence will a registrar's motion to dismiss be granted. Baidu would have cases proceed through discovery *whenever* gross negligence is alleged, no matter how conclusorily. New York courts have flatly rejected that approach. *See infra* at 5.

(responsibly) began restoring service a mere "two hours after first being contacted by Baidu," and its operations were "interrupted for approximately five hours" total.  (Compl. ¶¶ 5, 23).[4]

By way of comparison, in numerous cases involving inadequate responses to burglary alarms—where, unlike here, public safety was at issue and far more egregious conduct was involved—New York courts have found that a "[d]elayed or inadequate response," sometimes for hours, "without more, is not gross negligence."  *Indus. Risk Insurers*, 387 F. Supp. 2d at 307 (citation omitted); *see also Consumers Distrib. Co., Ltd. v. Baker Protective Servs., Inc.*, 202 A.D.2d 327, 327 (1st Dep't 1994); *Dubovsky & Sons, Inc. v. Honeywell, Inc.*, 89 A.D.2d 993, 994–95 (2d Dep't 1982).[5]  Register's conduct does not rise even to the level of wrongfulness alleged in those cases—where the courts found at most *ordinary* negligence:  They implicated landlords or alarm companies, which owed legal duties to provide reasonable security to the plaintiffs.  Here, by contrast, there was no legal duty involving public security, *or even a legal duty to provide Web site security*.   In fact, the parties expressly agreed in the MSA that Baidu— and not Register—would be "responsible for maintaining the security of [its] account" and "responsible for all activities that occur under that account."  (*See* MSA, Disclaimer of Warranties, 9).  If that provision were not clear enough, the parties went on to bar *any* claims against Register for "unauthorized use" of the Baidu site.  (MSA, Limitation of Liability, 9).[6]

Perhaps recognizing the defects in its factual allegations, Baidu suggests that it is

---

[4]   Baidu also fails to mention that it granted Register wide latitude and "sole discretion" in suspending or shutting down Baidu's (or any) account in the event of attack, dispute, or mistake by Register.  (MSA, Suspension, Cancellation, Transfer or Modification of Service(s), 9).

[5]   Ignoring these cases, Baidu relies on the one-paragraph opinion in *Green v. Holmes Protection of New York*, 216 A.D.2d 178 (1st Dep't 1995).  That case does not support Baidu's pleadings.  Not only did *Green* involve public health and safety and therefore implicate a lower standard, but the conduct in that case was also far more egregious than the conduct alleged here:  The burglar-alarm-company defendant *both* gave robbers a store's keys *and* relayed the security code to them, apparently without even attempting to follow the company's security procedures.

[6]   Baidu now argues (Opp. 11) that the Imposter's criminal actions were foreseeable, so they did not break the chain of causation.  But its Complaint stated only that Register "caused" its injuries (Opp. 9)—nothing more than "a formulaic recitation of the element[]" of the claim, which "will not do," *Iqbal*, 129 S. Ct. at 1949.  The claim must thus be dismissed.  In any event, Baidu has no support for its argument.  One of the two cases it relies on was *overruled* on appeal:  The court *reversed*, dismissing the complaint because a crime (a burglary) broke the chain of causation, despite the defendant's negligence (failing to fix a lock).  *Levin v. Eleto Realty Corp.*, 289 N.Y.S. 667 (1st Dep't 1936). The other case it cites said only that in that particular case the facts raised an issue for trial.  Here, the Imposter's actions were not reasonably foreseeable, and, in fact, Register itself was a victim of the attack.

inappropriate for this Court to dismiss a complaint whenever gross negligence is *alleged*. (Opp. 12). That is wrong. As this Court has explained, "New York courts are unwilling to let cases with releases of liability go to a jury on the issue of gross negligence simply because the plaintiff has added a conclusory allegation of gross negligence to a cause of action." *Indus. Risk Insurers*, 387 F. Supp. 2d at 307. After all, "[i]f a party needs only to add gross negligence as a theory of liability to force litigation to proceed through discovery and a trial, contracting parties would be stripped of the substantial benefit of their bargain, that is, avoiding the expense of lengthy litigation." *Id.* Because Baidu's allegations fail to state a claim of gross negligence, it should be held to its contract, where it explicitly waived the claims in its Complaint.[7]

Dismissing the Complaint, as required by New York law, would also comport with critical public-policy considerations. Permitting Baidu's allegations to stand here would create a dangerous precedent by providing a road-map for litigants to plead around the bargained-for liability limitations that support and sustain e-commerce. Contractual liability waivers are standard operating procedure on the Internet and vital to the free flow of billions of dollars of commerce on sites such as eBay, Amazon.com, and Google. If this Court condones Baidu's anemic allegations, allowing them to survive under the gross-negligence exception, it will seriously undermine that free flow of commerce.

II.    **Baidu's Tort Claims Are Barred as Duplicative of the Contract Claim**

Baidu concedes the hornbook principle that a "simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987). It thus insists that two independent duties existed here.[8] They did not. First, Baidu claims that the alleged release of its

---

[7]    The "least cost avoider" theory (Opp. 15 n.12) is irrelevant here. To the extent that New York courts ever invoke that theory, they do so only where parties have not agreed *ex ante* on who will bear the cost of an accident or mistake. *See, e.g.*, *U.S. v. Carroll Towing Co.*, 159 F.2d 169, 173 (2d Cir. 1947). Where parties have agreed to a liability waiver, New York's "policy" is to enforce it in the absence of gross negligence. *See supra* at 1-2.

[8]    Footnote 11 of Baidu's opposition also incorrectly suggests that Register's objection is to the pleading of two inconsistent claims. It is not. What is improper about Baidu's approach is its attempt to resuscitate a barred contract claim by pleading tort claims, which are merely duplicative of the contract claim. (*See* Mem. 15–16).

username and password constituted a breach of the "fiduciary duty toward its customers to keep [confidential] information secure." (Opp. 13). To begin with, Baidu did not plead a breach of a fiduciary duty in its Complaint, so it cannot assert one now. Aside from that, there could not possibly exist such a duty here because Baidu expressly "consent[ed] to any and all . . . disclosures and use of . . . information provided by [Baidu] in connection with the registration of a domain name or use of any Services," including "for targeted marketing and other purposes." (MSA, Disclosure and Use of Information, 8).[9] Baidu's claim that its information was confidential is therefore perplexing. The only two cases that Baidu relies on involved such obviously confidential information as social security numbers.[10] Baidu fails to plausibly allege the existence of a fiduciary duty to keep some theoretically confidential information secure.

Second, Baidu claims (Opp. 14) that a bailment duty somehow arose independent of the contract, but later acknowledges (correctly) that "bailment is typically adjudicated as a form of contract," (Opp. 15) It is well-settled that "[w]here there is an express contract between a bailor and bailee, the terms thereof control as to the liability of the bailee." *Sagendorph v. First Nat'l Bank*, 218 A.D. 285, 286 (3d Dep't 1926).[11] Therefore, any claim for an alleged breach of the duty of bailment is obviously duplicative of the breach-of-contract claim and should be dismissed.

## III.    Baidu Cannot State Bailment, Conversion, or Aiding-and-Abetting Claims

Baidu has failed to adequately plead the elements of its common-law tort claims.[12]

---

[9]    Baidu also "acknowledge[d] and agree[d] that it [was] [Baidu's] responsibility to safeguard the User name, password and any secret question/secret answer [Baidu] select[ed] from any unauthorized use, including by [Baidu's] agents and Assignees," and that "in no event [would] Register.com be liable for the unauthorized use or misuse of [Baidu's] user name or password." (MSA, User Name and Password; Account Information, 6).

[10]    Opp. 8 (citing *Jones v. Commerce Bancorp., Inc.*, No. 06-cv-835, 2006 WL 1409492, at *1 (S.D.N.Y. May 23, 2006); *Daly v. Life Ins. Co.*, 782 N.Y.S.2d 530, 535 (N.Y. Sup. Ct. 2004)).

[11]    *See also Marvin E. Herman, Inc. v. White*, No. 91 Civ. 5025 (CSH), 1994 WL 363980, at *2 (S.D.N.Y. July 13, 1994) (same); *see generally* N.Y. Jur. Bailments § 27.

[12]    In addition to the reasons discussed here and in the Opening Memorandum, Baidu's tort claims fail because the baidu.com domain name is not "property," and it is irrelevant that the word "Baidu" is trademarked. *See Wornow v. Register.com, Inc.*, 8 A.D.3d 59, 59 (1st Dep't 2004). Baidu's allegedly contrary cases apply the law of different States. *See* Mem. 17–18; *but see Universal Tube & Rollform Equip. Corp.*, 504 F. Supp. 2d 260, 268 (N.D. Ohio 2007). Baidu also claims, ambiguously, that Register converted Baidu's "confidential and proprietary information."

[Footnote continued on next page]

*Conversion*. Baidu argues that its domain name is "property" (Opp. 17), rather than "a contract right that cannot exist separate and apart from the services performed by Register," *Wornow*, 8 A.D.3d at 59. Even if it were (*but see supra* n.12), it would be *intangible* property, and a claim "for conversion of intangible property is not actionable under New York law." *Berman*, 580 F. Supp. 2d at 206–07 & n.7 (citations omitted). Although there is a limited exception for intangible electronic records that could be printed (and hence made tangible), *see Thyroff*, 8 N.Y.3d at 292, that exception clearly could not apply to a domain name.

Aside from any question of "property," Baidu's claim fails because Baidu conceded, as it must, that Register did *not intend* to exercise control over Baidu's property (Compl. ¶ 46)— *and conversion is an **intentional** tort*. Baidu misleadingly states that "wrongful intent" is not an element of conversion (Opp. 18), but the very case it cites for the elements of the tort holds that conversion occurs when "someone, *intentionally* and without authority, assumes or exercises control over personal property."[13] Without pleading intent, Baidu cannot state a plausible claim for conversion, "*even though [its] act or omission [was] negligent.*" Restatement (Second) of Torts § 224 & cmt. b. The sole case that Register relies on holds only that "[i]ntent to possess *another's* property is not an essential element of conversion."[14] But that addresses an entirely separate issue: that "intention to interfere with the rights of the *other*"—as opposed to intent "to exercise a dominion or control over the chattel"—is not required for conversion. *Id.* § 224 cmt. c. In other words, a defendant cannot avoid a conversion claim based on a reasonable belief that

---

[Footnote continued from previous page]
(Opp. 17). First, as explained above, Baidu has pointed to no confidential information in its complaint. *Supra* at 6. Second, Baidu's allegation is irredeemably vague, failing to specify what information it is referring to. *See Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 206–07 (S.D.N.Y. 2008) (must allege conversion of "a specific, identifiable piece of property in order to sustain the cause of action"). Third, in the only case Baidu cites for support, *Thyroff v. Nationwide Mut. Ins. Co.*, 8 N.Y.3d 283 (2007), the defendant had denied the plaintiff access to particular electronic records that *belonged to plaintiff* (specifically, e-mail correspondence). *See id.* at 284–85. Here, there is no allegation that Register denied Baidu access to *Baidu's* electronic records; rather, Baidu is claiming an interest in records that belong to *Register*, even if they include "information" submitted by Baidu. Fourth, and perhaps most importantly, Baidu has pleaded no link between the purported conversion of this information and its alleged damages (e.g., "lost revenue from its search engine service," Compl. ¶ 24).

[13] *See* Opp. 16 (quoting *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (N.Y. 2006) (emphasis added)); *see generally* N.Y. Prac. Torts § 2:12.

[14] *Ahles v. Aztec Enters., Inc.*, 120 A.D.2d 903, 903–04 (3d Dep't 1986) (emphasis added).

the plaintiff had no right to the property.  That issue is irrelevant here:  The flaw in Baidu's complaint is that it has not alleged facts to plausibly suggest that Register intended to exercise dominion over the property *at all*—there is no dispute that, in communicating with the Imposter, Register's agent had intended nothing more than to give Baidu access to its own account.

Moreover, to the extent that one could be said "to exercise dominion" over intangible "property," Baidu has not pleaded any facts demonstrating that Register exercised improper dominion over the domain name.  Register exercised only so much dominion as it was authorized to by the MSA.  If anyone exercised improper dominion over baidu.com, it was the Imposter.

Finally, Baidu alleges that Register's delay in restoring its control over the domain name supports its conversion claim, ignoring the critical element of the tort that Register must have acted "without authority."  Baidu apparently forgets that it agreed in the MSA to permit Register, in the event that Baidu's "server is involved in an attack," to shut down the account "while the matter is investigated and resolved in Register.com's absolute discretion."  (MSA, System Performance Degradation, 8–9).  Register therefore had *express* authority for any delay.

*Breach of Bailment*.  Baidu argues that it "relinquished its exclusive possession [over baidu.com] when it" registered it.  (Opp. 16).  But here there could be no "relinquishment" because the domain name was never held "exclusive[ly]" by Baidu.  *Hutton v. Pub. Storage Mgmt., Inc.*, 676 N.Y.S.2d 886, 886–87 (2d Dep't 1998).  Baidu's rights to it, however they are classified, came into being solely as a result of the MSA.  Moreover, even if there were a bailment, it is well-established that "[t]he parties to a bailment may, by contract, diminish the bailee's common-law obligation with respect to the subject of the bailment or relieve the bailee of liability altogether."  N.Y. Jur. Bailments § 33 (citing cases).  That is precisely what the MSA did here:  Baidu relieved Register of all liability for the conduct alleged in the Complaint.

*Aiding and Abetting*.  Baidu concedes through silence (Opp. 19) that Register had no actual knowledge of the Imposter's actions.  Instead, it insists that "actual knowledge" is not an element of a claim for aiding and abetting.  This Court, however, held as recently as 2006 that "New York has not adopted a constructive knowledge standard for imposing aiding and abetting

liability." *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 02 Civ. 2561 (KMW), 2006 WL 335357, at *5 (S.D.N.Y. Feb. 15, 2006) (citations omitted); *see also Rosner v. Bank of China*, No. 09 Civ. 333, 2009 WL 3377886, at *2 (2d Cir. Oct. 21, 2009).  Although Baidu objects that *Dangerfield* is but "a single federal case," (Opp. 19), *Dangerfield* cites three other holdings of this Court going back to 1996.  As this Court explained in 2002, "[c]onstructive knowledge and/or allegations that [a defendant] 'recklessly disregarded' or 'should have known' of the wrongdoing will not withstand a motion to dismiss" for aiding and abetting.  *Diamond State Ins. Co. v. Worldwide Weather Trading LLC.*, No. 02 Civ. 2900 (LMM) (GWG), 2002 WL 31819217, at *6 (S.D.N.Y. Dec. 16, 2002).  In fact, even one of the cases Baidu relies on makes plain (in the same sentence that Baidu selectively quotes from) that "constructive knowledge . . ., is insufficient."  *Cromer Fin. Ltd. v. Berger*, No. 00 Civ. 2284 (DLC), 2003 WL 21436164, at *9 (S.D.N.Y. June 23, 2003).  The few other cases that Baidu cites mention only in passing (and in *dicta*)—without any analysis—that "actual or constructive knowledge" will suffice.

## IV.    Baidu Has Failed To State a Claim Under the Lanham Act

Baidu asserts that the statutory immunity provided to registrars under the Lanham Act applies only to the initial registration of a domain name, and not to any subsequent conduct. (Opp. 21).  That argument ignores a key part of the Act, which provides immunity "for the registration *or maintenance* of a domain name."  15 U.S.C. § 1114(2)(D)(iii) (emphasis added). There is an exception for "bad faith intent to profit from such registration or maintenance," but Baidu does not allege that the exception applies here.  Nevertheless, all of the cases Baidu cites for its counter-textual interpretation involved bad faith or else accused a registrar of conduct far outside of its ordinary functions.[15]  Because the Act, on its face, immunizes registrars from trademark-infringement actions arising out of the allegedly faulty maintenance of a registry—all

---

[15]    *See Transamerica Corp. v. Moniker Online Servs., LLC*, 672 F. Supp. 2d 1353, 1366 (S.D. Fla. 2009) (defendant was allegedly "part of a scheme to profit from the use of the infringing names"); *Verizon Cal. Inc. v. OnlineNIC, Inc.*, 647 F. Supp. 2d 1110, 1126 (N.D. Cal. 2009) (registrar was also the *registrant* of the infringing domain name); *Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1097, 1105–06 (C.D. Cal. 2009) (registrar had allegedly breached rival's system and stolen domain name).

that is pleaded here—Baidu's Lanham Act claim cannot survive a motion to dismiss.

Immunity aside, Baidu has failed to plead sufficient facts for contributory infringement.[16] Baidu's argument hinges on analogizing Register to "flea market operators" that have been held liable for infringements occurring on their premises. (Opp. 24). But the flea-market cases relied on the principle that a landlord "is responsible for the torts of those it permits on its premises 'knowing or having reason to know that the other is acting or will act tortiously.'" *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*, 955 F.2d 1143, 1149 (7th Cir. 1992). A domain-name service is hardly analogous to a landlord; it is far more like eBay, which the Second Circuit just this month held has no duty to police its auction Web site for trademark infringement. *See Tiffany (NJ) Inc. v. eBay, Inc.*, ___ F.3d ___, 2010 WL 1236315, at *13 (2d Cir. April 1, 2010).[17] Regardless, Baidu has not plausibly pleaded scienter. Baidu's arguments to the contrary (Opp. 24–25) just rehash its spurious argument that Register's agent acted with anything more than negligence in mistakenly concluding that the eight-digit numeric code sent by the criminal Imposter was the same as the code she had sent to the Baidu account. Baidu briefly discusses "willful blindness," but that standard requires that a defendant "suspect wrongdoing and deliberately fail to investigate." *Hard Rock*, 955 F.2d at 1149. Baidu has made no factual allegation sufficient to support a claim that Register "suspect[ed] wrongdoing," and its claim that Register made a "deliberate choice not to investigate" (Opp. 25) flounders on the complaint's own allegation that Register began correcting the problem *within two hours.*

## CONCLUSION

The complaint should be dismissed.

---

[16] Baidu has also not pleaded sufficient facts to show that the Imposter committed trademark infringement. After all, the Imposter did not use Baidu's mark when it hijacked the site. Baidu's opposition relies on a case with facts much different from those here. *See Planned Parenthood Fed'n of Am., Inc. v. Bucci*, 1997 WL 133313 (S.D.N.Y. Mar. 24, 1997). In that case, it was critical to the holding that there was a "*lengthy delay* between [an Internet user's] attempt[] to access plaintiff's home page and learning that one has failed to do so," given the content on the screen. *Id.* at *8-9 (emphasis added). Here, by contrast, Baidu does not dispute that "any confusion would have been dispelled *once Baidu's customers saw the contents of the Imposter's web page*." (Opp. 23 (emphasis added)).

[17] Although Baidu suggests that the flea-market principle has been applied in the context of domain names (Opp. 24), the cited cases do not support that proposition.

10

Dated:     New York, New York
           April 23, 2010

                                    Respectfully submitted,

                                    GIBSON, DUNN & CRUTCHER LLP

                                    By:  _____
                                         Orin Snyder (OS-3122)
                                         Alexander H. Southwell (AS-0997)

                                         200 Park Avenue
                                         New York, New York 10166-0193
                                         (212) 351-4000

                                    *Attorneys for Defendant Register.com, Inc.*

11